# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT GARRETT, #N-74351,   )
                            )
    Plaintiff,              )
                            )
vs.                         )   CASE NO. 10-cv-955-GPM
                            )
GREGORY SCHWATZ, *et al.*,  )
                            )
    Defendants.             )

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Robert Garrett, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a twenty year sentence for burglary, and a five year sentence for aggravated battery. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff alleges that while he was attending a three-hour class on February 9, 2009, he asked to use the restroom, saying he had an emergency. Defendant DeRosse, the teacher, directed Plaintiff to address his request to the correctional officer in charge, Defendant Colgan. Defendant Colgan denied Plaintiff permission to go, based on the policy set by Defendant Schwatz that inmates would not be allowed to use the restroom during school hours. Plaintiff alleges that because he takes blood pressure medication, he must drink extra water, thus he has a need for frequent trips to the bathroom. After Defendant Colgan refused Plaintiff's request for a

bathroom break, Plaintiff was unable to hold his bladder or bowels, and urinated and defecated in his pants.

When Plaintiff's class ended and Plaintiff got in line with other inmates to go to lunch, he again needed to visit the restroom, and asked Defendant Myers for permission to leave the line to relieve himself. Defendant Myers refused permission, and Plaintiff again urinated in his pants.

Plaintiff was required to proceed with the other inmates to the dining hall, where Defendant Lieutenant Dintelmann[1] refused to allow Plaintiff to return to the housing unit to clean himself. Defendant Lt. Dintelmann ordered Plaintiff to take his seat, and required him to remain there, sitting in his own excrement, while he ate lunch at a table with four other inmates. Plaintiff was not able to clean himself or change clothes until he returned to his cell after the meal was finished.

Since this incident, Plaintiff has endured daily ridicule and name-calling from guards and other inmates, and he claims he is now taking psychotropic medications because of his resulting emotional distress. On May 12, 2010, he experienced a similar incident after he was refused permission to use the restroom while in the law library (Doc. 1, 33-34). In addition, Plaintiff claims that after he filed grievances against staff over the incident, he has suffered retaliation by being placed in segregation, having his property destroyed by staff or given to another inmate, and being placed with cellmates who take his property and try to pick fights with him (Doc. 1, p. 18).

Plaintiff's grievances over the policy to deny restroom breaks during class, and against

---

[1] Defendant Lieutenant Dintelmann is not the same individual as Defendant Dintelmann, the Assistant Warden.

Defendants DeRosse, Colgan, Lt. Dintelmann and Asst. Warden Dintelmann's refusal to allow him to leave class for a bathroom break were denied by Defendants Hubbard and Miller.

Plaintiff seeks nominal, compensatory, and punitive damages, and an emergency transfer to another institution.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into two (2) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Denial of Access to Restroom**

The primary issue raised by Plaintiff falls into the category of a dispute over the conditions of his confinement. In such a case, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). The objective component of a conditions claim focuses on the nature of the acts or practices alleged to constitute cruel and unusual

punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The pertinent question is whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

The Eighth Amendment also forbids "the wanton and unnecessary infliction of pain," including "pain without any penological purpose." *Rhodes*, 452 U.S. at 347. "Even more fundamentally, the Eighth Amendment protects the basic dignity of the person being punished . . . . It prohibits treatment that robs the inmate of his innate dignity as a human being." *Gruenberg v. Gempeler*, 740 F. Supp. 2d 1018, 1021-22 (E.D. Wis. 2010) (citing *Trop v. Dulles,* 356 U.S. 86, 100 (1958); *Hope v. Pelzer,* 536 U.S. 730, 738 (2002); *Bowers v. Pollard,* 602 F. Supp. 2d 977 (E.D. Wis. 2009), *aff'd,* 345 F. App'x 191 (7th Cir. 2009) (unpublished)).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim, in other words, the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety. The prison official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter,* 501 U.S. 294, 303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994); *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).

The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

Turning to the specifics of Plaintiff's claim, some courts have held that the lack of access to toilet facilities for a relatively short period of time is not sufficiently serious to state a claim of constitutional dimension. *See, e.g., Clark v. Spey*, Case No. 01-C-9669, 2002 WL 31133198 at *2-3 (N.D. Ill. Sept. 26, 2002) (inmate held in cold cell with no toilet for several hours overnight failed to state a claim); *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1188 (10th Cir. 2003) (pretrial detainee held for five hours in cell lacking a toilet did not state claim for cruel and unusual punishment). However, in *Clark* and *Ledbetter*, the denial of access to a toilet did not result in the inmate soiling himself. In contrast, where an inmate was required to sit in his own feces for five hours during which he was denied access to a bathroom and not allowed to clean himself, the court found he had sufficiently stated an Eighth Amendment violation. *Mitchell v. Newryder*, 245 F. Supp. 2d 200 (D. Me. 2003); *see also Gruenberg v. Gempeler*, 740 F. Supp. 2d 1018, 1022-23 (E.D. Wis. 2010) (plaintiff stated claim for constitutional violation where allegations included he was made to lie in his own feces twice while in restraints waiting for keys he had swallowed to pass out of his bowels).

Plaintiff's allegations, at the pleadings stage, sufficiently state a claim that the denial of permission to use the restroom or clean himself after he defecated and urinated in his clothing deprived him of the "minimal civilized measure of life's necessities" as well as violated his basic

human dignity.  As to the subjective component, Plaintiff alleges that Defendant Colgan ordered him to remain in the classroom, then watched as he urinated and defecated in his pants; Defendant Myers ordered Plaintiff to stay in the line and watched and made a joke while he urinated in his pants; and Defendant Lt. Dintelmann made him remain in the lunchroom despite knowing that he had soiled himself.  Plaintiff states that he told each of these Defendants that he had an emergency need for the restroom, or later, that he needed to clean himself after he was unable to hold his bladder and bowels, yet each refused him permission to meet these needs.   At this point in the case, Plaintiff has stated a claim for deliberate indifference as to these Defendants.

In addition, Plaintiff identifies Defendant Schwatz, the warden, as the individual who made the policy decision that inmates were not to be allowed bathroom breaks during class time, the duration of which was three hours, and that (according to Plaintiff) no exceptions would be permitted (see Doc. 1, p. 33-34, referencing Warden's Bulletin 10-07, announcing the policy).  If this policy was indeed as Plaintiff describes, it is foreseeable that inmates with medical needs might find themselves in Plaintiff's situation.  For these reasons, the claims against Defendants Colgan, Myers, Lt. Dintelmann, and Schwatz cannot be dismissed at this time.

However, the other named Defendants have no such direct liability, based on the allegations in the complaint.  Plaintiff states that Defendant DeRosse, the classroom teacher, did not present Plaintiff's request to Defendant Colgan or help him obtain permission to go to the bathroom.  He names Defendant Principal Wargel, Defendant DeRosse's supervisor, and claims that Defendant Wargel, like Defendant DeRosse, failed to intervene on Plaintiff's behalf despite his awareness of the no-break policy.  These allegations do not rise to the level of deliberate

indifference.

Similarly, Plaintiff alleges that Defendants Wilson and Asst. Warden Dintelmann either supported or enforced the no-bathroom-break policy, but does not state that either of them was on the scene or was involved in making any decisions regarding Plaintiff's requests to use the restroom. Although they may have had a supervisory role as to other Defendants, this is not sufficient for liability to attach to them. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). This rule also applies to Defendant Randle, the Director of the Illinois Department of Corrections, who had no personal involvement in the deprivations of which Plaintiff complains.

As to Defendants Miller and Hubbard, Plaintiff alleges only that they rejected his grievances filed over the denial of access to the restroom, and challenging the warden's policy. Again, Plaintiff does not claim that Defendants Miller or Hubbard had any direct involvement in the events of February 9, 2009. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Grieveson v. Anderson*. 538 F.3d 763, 772 n.3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to

a liberty interest protected by the due process clause."). Moreover, an inmate has no right to have a grievance decided in his favor. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

For these reasons, Plaintiff has not stated a claim upon which relief may be granted against Defendants DeRosse, Wargel, Asst. Warden Dintelmann, Wilson, Randle, Miller, or Hubbard, and these Defendants shall be dismissed with prejudice. Plaintiff may proceed on his conditions of confinement claim against Defendants Colgan, Myers, Lt. Dintelmann, and Schwatz.

However, as to Plaintiff's plea for damages to compensate him for his emotional distress resulting from this incident, he is advised that the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997e *et seq.*), as amended in 1996 by the Prisoner Litigation Reform Act ("PLRA"), strictly limits an inmate's recovery for mental or emotional injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C.A. § 1997e(e). Because Plaintiff has not shown that he sustained any physical injury as a result of the allegedly unconstitutional conditions of confinement, he therefore has no viable claim for emotional distress, and that portion of his claim must be dismissed.

**Count 2 - Retaliation**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim

so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* A complaint that provides a short, clear statement of the relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim. *Id.*

In the "Declaration" attached to his complaint, Plaintiff alleges several acts of retaliation by prison staff after Plaintiff filed grievances against them following the events on February 9, 2009, when he was not permitted to use the restroom (Doc. 1, p. 18). The retaliation included "placing me in seg. confindment [sic], destroying my property, placing me in cells with inmates who take my property, who also pick at me and try to entice me to fight with them, staff members who destroyed my property also gave or let another inmate take my property." *Id.*

Plaintiff has sufficiently stated the elements of a retaliation claim at the pleadings stage. However, he has failed to identify which Defendants took the retaliatory actions he has listed above. Accordingly, Plaintiff shall be allowed an opportunity to amend his complaint to identify those Defendants responsible for the alleged retaliation.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff has failed to state a claim upon which relief may be granted against Defendants **DEROSSE, ASSISTANT WARDEN DINTELMANN, HUBBARD, MILLER, RANDLE, WARGEL**, and **WILSON**. Therefore, these Defendants are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed on his retaliation

claim in **COUNT TWO,** Plaintiff shall file his First Amended Complaint, naming the individual Defendant(s) directly responsible for the alleged acts of retaliation in Count Two, within 35 days of the entry of this order (on or before August 31, 2011). Plaintiff is **ADVISED** that the First Amended Complaint must contain both claims designated in this Order as Counts One and Two, and ONLY those claims. Further, the First Amended Complaint shall name ONLY those Defendants directly and personally responsible for the allegedly unconstitutional acts in Counts One and Two. Should the First Amended Complaint not conform to these requirements, it shall be stricken and Count Two may be dismissed. Failure to timely file an amended complaint shall result in the dismissal of Count Two with prejudice, pursuant to Federal Rule of Civil Procedure 41(b).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, including all claims and defendants not dismissed above, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.

As discussed above, Count One of Plaintiff's complaint is sufficient under 28 U.S.C. § 1915A. However, service shall not be initiated on Defendants **COLGAN, MYERS, LT. DINTELMANN**, and **SCHWATZ** until after Plaintiff has filed his First Amended Complaint in accordance with this order.

In addition, the Clerk shall not initiate service on any additional Defendants responsible for the retaliatory acts described in Count Two until such time as Plaintiff has identified them by

name in a properly filed First Amended Complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** 7/27/2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge