IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT GARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-955-GPM-DGW |
| | ) | |
| GREGORY SCHWATZ, LIEUTENANT | ) | |
| DINTELMAN, C/O COLGAN, C/O MYERS, | ) | |
| and OFFICER URBANEK, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATIONS

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the question whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. §1997e(a). It is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants (Doc. 36) be **GRANTED in part and DENIED in part**; that the Court **FIND** that Plaintiff *did exhaust* administrative remedies prior to filing suit against Defendants Colgan and Dintelman, but *did not exhaust* administrative remedies as to Defendant Schwartz, Myers, and Urbanek; that Defendants Schwartz, Myers, and Urbanek be **DISMISSED** from the action; and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

On November 24, 2010, Plaintiff Robert Garrett filed a complaint in this 42 U.S.C. § 1983

civil rights action alleging that officials at the Pinckneyville Correctional Center violated his Eighth Amendment rights by refusing to allow him access to the restroom, causing him to soil himself on two separate occasions. Upon threshold review, the Court allowed Plaintiff to proceed against Defendants Colgan, Myers, Dintelmann, Schwatz, and Urbanek on a claim that by denying Garrett access to the restroom, they subjected him to cruel and unusual conditions of confinement, in violation of the Eighth Amendment. All other claims and defendants were dismissed from the action (Docs. 10 and 12).

On January 10, 2012, the defendants filed a Motion for Summary Judgment (Doc. 36), arguing they are entitled to judgment in their favor because Garrett did not exhaust administrative remedies prior to filing suit as required by 28 U.S.C. § 1997e(a). In response, Garrett contends that he submitted grievances regarding the incidents, but the grievances were either not responded to or they were returned to him without review (Doc. 43). Defendants concede that Garrett filed grievances with the ARB on three occasions: February 24, 2009; July 22, 2010; and September 7, 2010, but argue that none of those grievances were "properly" exhausted.[1]

*Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on April 5, 2012, and determined the following.

**The February 9, 2009, grievance.** Garrett filed a grievance complaining that on February 9, 2009, Defendant Colgan refused him access to the restroom from his GED class. As a result of the denial, Garrett soiled himself. After class, Garrett asked Lt. Dintelman, who was in charge of the dietary school line, for permission to use the restroom to clean himself, but

---

[1] There is some confusion regarding the dates of the filing of these grievances. In their Motion for Summary Judgment, defendants refer to the dates the grievances were filed with the ARB. Garrett refers to the dates he initially submitted the grivances at the institutional level.

2

Dintelman denied his request and told him he had to wait until the "chow line" was finished, and inmates returned to their units.

The record contains two grievances dated February 9, 2009. One grievance bears a "received" stamp indicating the ARB received it on February 24, 2009 (Doc. 36-3, pp. 3-4). The other grievance, identical in substance, contains a counselor's response dated June 2, 2009, which reads: "Per administration, bathroom breaks are not allowed during classes." The grievance did not display an ARB "received" stamp (Doc. 36-3, pp. 8-9). Defendants use the existence of both grievances to demonstrate that Garrett sent two grievances at the same time, one directly to the ARB, which was not the proper procedure, and the other to his counselor (Hrg. Trans. p. 8).

At the hearing, Garrett explained that he first gave the grievance to his counselor, who told him the grievance "would never make it out of the institution" (Hrg. Trans. p. 16). Fearing his grievance would be ignored at Pinckneyville Correctional Center, he sent the grievance directly to the ARB. The ARB returned it to Garrett on March 3, 2009, because it did not contain a grievance officer's response or a CAO response (Doc. 36-3, p. 2). Garrett testified that upon receipt of the ARB's return letter, on May 7, 2009, he submitted the grievance to Counselor Hubbard (not a defendant), who, on June 2, 2009, responded that bathroom breaks were not allowed during classes (Doc. 36-3, p. 8). Counselor Hubbard put an "x" in the box marked "Send directly to Grievance Officer." Garrett testified that on June 4, 2009, he submitted the grievance to the grievance officer, as directed (Hrg. Trans. p. 20). Garrett testified further, however, that he never received a response from the grievance officer. Defendants argued that no institutional record exists to prove that Garrett sent the grievance to the grievance officer. Defendants further argued that even if Garrett had presented the grievance in a timely manner at each stage of

administrative review, the February 9, 2009, grievance would not be sufficient to exhaust against all defendants because the grievance names only Defendants Colgan and Dintelman (Hrg. Trans. p. 23).

**July 22, 2010, submission to the ARB**. Garrett testified that he submitted grievances from February (described above), May (regarding mail), and July 2009 (regarding Counselor Hubbard's statement that his grievance would never leave the institution) to the ARB on July 22, 2010 (Doc. 36-3, p. 5). Those grievances were returned to Garrett unreviewed on August 2, 2010, because they were not submitted to the ARB within 30 days of the CAO's response (Doc. 36-3, p. 5). When the Court asked Garrett why he waited a year to submit the grievances to the ARB, he responded that he did not receive them from the counselor in a timely manner. He added that grievances sometimes sit in the counselor's box for a year before any action is taken on them (Hrg. Trans. pp. 24-25).

**May 12, 2010, grievance.** Plaintiff filed a grievance indicating that Defendant Urbanek refused him access to the restroom from the law library, causing Garrett to urinate on himself (Doc. 36-3, pp. 18-19). Garrett submitted the grievance as an emergency grievance. On May 24, 2010, Warden Randy Orr ordered the grievance expedited as an emergency. On June 29, 2010, Grievance Officer K. Deen recommended denial of the grievance based on the law library restroom policy and Healthcare Unit's representation that Garrett's medications did not affect his daily activities. The CAO concurred in the denial on July 7, 2010 (Doc. 36-3, p. 17). Plaintiff submitted the denied grievance to the ARB, which received it on September 7, 2010. The ARB returned the grievance unreviewed on September 14, 2010, because Garrett had not appealed it within 30 days of the CAO's response. At the hearing, Garrett testified that he sent the denied

4

grievance to the ARB immediately after he received it. He stated that he had no control over when the ARB received it (Hrg. Trans. Pp. 25-26).

## CONCLUSIONS OF LAW

*Legal Standards*

The PLRA provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally. If the complaint is not resolved, the inmate may file a

5

grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE TIT. 20, § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. ILL. ADMIN. CODE TIT. 20, § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. ILL. ADMIN. CODE TIT. 20, § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. ILL. ADMIN. CODE TIT. 20 §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or

6

appealing a grievance. *See Kaba*, 458 F.3d at 684.

Under Illinois regulations, a grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." The Code goes on to state, however, that "this provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." ILL. ADMIN. CODE TIT. 20, § 504.810(b). The Supreme Court has held that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219. The Court emphasized that the PLRA does not impose a specific requirement regarding who must be named in a grievance for proper exhaustion. Instead, the level of detail necessary in a grievance for adequate exhaustion should be determined by prison regulations. *Id.* at 218-19. The Court opined that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

*Discussion*

Based on the evidence adduced and arguments made at the hearing, the undersigned recommends that the Court deem Garrett to have exhausted the February 9, 2009, grievance, but find Garrett did not properly exhaust the grievances filed with the ARB on July 22, 2010, or the May 12, 2010, grievance.

**February 9, 2009, grievance.**  The Court finds credible Garrett's explanation that after his counselor told him his grievance would never make it out of the institution, he sent the grievance directly to the ARB, who returned it because it did not contain a grievance officer's response or a CAO's response.  Garrett then sent it to his counselor, who responded, and directed him to send the grievance to the grievance officer.  The Court finds credible Garrett's statement that he immediately forwarded the grievance to the grievance officer, but never received a response.  Garrett's testimony demonstrated that he was familiar with the grievance process, and he was aware that sending his grievance directly to the ARB was not the proper procedure.  Garrett was faced with a statement from his counselor that his grievance would never leave the institution.  After hearing such a statement, it is reasonable that Garrett would believe following the proper procedure—that is sending the grievance to his counselor, waiting for a response, then sending it to the grievance officer—would be futile.  And in fact, when Garrett did send the grievance to the grievance officer after the ARB returned it to him unreviewed, he received no response to it.  Therefore, his attempt to bypass institutional review of the grievance by sending it directly to the ARB was a reasonable attempt, under the circumstances, to exhaust his administrative remedies.  Through no fault of his own, Garrett was unable to pursue the administrative remedies available to him on paper.  Garrett should not punished with dismissal of his case because the grievance officer never responded to the February 9, 2009, grievance.  Accordingly, it is recommended that the Court deem exhausted Garrett's February 9, 2009, grievance.

That does not close the book on the February 9, 2009, grievance, however, because the grievance names only Defendants Colgan (who denied him access to the restroom from GED

class) and Dintelman (who denied access to the restroom to clean himself).[2] Thus, deeming the February 9, 2009, grievance exhausted has the effect of exhausting administrative remedies against Defendants Colgan and Dintelman only.

**July 22, 2010, submission to the ARB.** As described above, on July 22, 2010, the ARB received grievances sent by Garrett dated February 9, 2009, May 27, 2009, and July 22, 2009. The ARB returned the grievances to Garrett unreviewed on August 2, 2010, because they had not been submitted to the ARB within 30 days of the CAO's response, as required by the Illinois Code. The Court does not find credible the explanation offered by Garrett at the hearing that he did not receive the grievances in time to file them within the 30-day period. First, only the February 9, 2009, grievance is relevant to the claims raised in Garrett's complaint. Second, the Court has already determined that Garrett's actions in attempting to raise the issue through the administrative review process sufficient to deem the grievance exhausted. Third, the Court simply does not believe Garrett's unsubstantiated claim that grievances sit in the grievance officer's box for up to a year before they are considered. Accordingly, the undersigned recommends that Garrett's July 22, 2010, submission to the ARB was not sufficient to exhaust any of the grievances.

**May 12, 2010, grievance.** Plaintiff filed an emergency grievance directly with the warden on May 12, 2010, complaining that Officer Urbanek denied him access to the restroom from the law library, causing Garrett to urinate on himself. The warden determined the grievance should be expedited. Grievance Officer K. Deen (not a defendant) responded to the grievance recommending it be denied on June 29, 2010. Warden Randy Orr (not a defendant) concurred in the denial of the grievance on July 7, 2010 (Doc. 36-3, p. 17). Plaintiff testified at the hearing that he mailed the denied grievance to the ARB immediately after receiving it. The ARB did not

---

[2] The grievance also identifies Mr. Derosse, the GED class instructor, but Mr. Derosse is not a defendant in the action.

receive the grievance until September 7, 2010, 30 days too late. At the hearing Garrett testified that he did all he could in an attempt to exhaust the grievance. He had no control over the denied grievance after he placed it in the outgoing mail. It is both possible and plausible that Garrett's grievance took a few days to get from the CAO to Garrett, but if Garrett placed it in the outgoing mail the next day, it would have had to arrive at the ARB within 26 days. Instead it did not arrive for 60 days. The Court finds it unreasonable that mail from Pinckneyville Correctional Center to Springfield, Illinois, would have taken that long. Based on this timeline, the Court finds not credible Garrett's statement that he mailed the grievance as soon as he received it from the CAO. Accordingly, the Court believes Garrett did not properly exhaust this grievance.

In summary, the undersigned recommends that the Court deem Garrett to have exhausted his administrative remedies against Defendants Colgan and Dintelman, but not against Defendants Schwatz, Myers, and Urbanek.

## CONCLUSION

Therefore, based on all the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants (Doc. 36) be **GRANTED in part and DENIED in part**; that the Court **FIND** that Plaintiff *did exhaust* administrative remedies prior to filing suit against Defendants Colgan and Dintelman, but *did not exhaust* administrative remedies as to Defendant Schwartz, Myers, and Urbanek; that Defendants Schwartz, Myers, and Urbanek be **DISMISSED** from the action; and that the Court adopt the foregoing findings of fact and conclusions of law.

**DATED: June 1, 2012**

                                                  **DONALD G. WILKERSON**
                                                  **United States Magistrate Judge**